**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

VERNER FRED POE, JR.,

Plaintiff,

v. CIVIL ACTION NO. 2:11-cv-00645

TOWN OF GILBERT, WEST VIRGINIA,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant's motion to dismiss [Docket 9.] Plaintiff responded to the motion and Defendant filed its reply (Docket 11, 13). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss.

*I. BACKGROUND*

This dispute arises from a traffic stop conducted by two Gilbert, West Virginia police officers, Officers R. Sipple and B. T. Toler. Plaintiff did not name either police officer as a defendant. The sole defendant is the Town of Gilbert.

The following allegations are drawn from Plaintiff's Complaint and are construed in the light most favorable to Plaintiff. On October 30, 2009, Plaintiff, accompanied by his brother-in-law, was driving his Chevrolet truck on Route 80 in Gilbert, West Virginia. (Docket 1, ¶¶ 7, 9, 17.) Officers Sipple and Toler, presumably in a patrol car, pulled Plaintiff over and advised him that one of his truck's headlights was out. (*Id.*, ¶10.)

In the course of the traffic stop, the officers learned that Plaintiff's registration was expired. (*Id.*, ¶¶ 10-11.) Consequently, the officers issued Plaintiff a citation for the broken

headlight as well as the expired registration. (*Id*., ¶¶ 11-12.) Officer Sipple instructed Plaintiff to sign the citation and, according to Plaintiff, he "politely" refused. (*Id.* ¶ 13.) Officer Sipple told Plaintiff that if he continued to refuse he would be taken to jail. (*Id.*) Plaintiff again "politely" refused to sign the citation. (*Id.*, ¶ 14.) Officer Sipple then allegedly opened Plaintiff's door, grabbed his right leg, and then, assisted by Officer Toler, tried to pull Plaintiff out of the truck. (*Id.*) To protect himself from injury, Plaintiff clung to the steering wheel—conduct which allegedly enraged the police officers and caused them to pull harder on Plaintiff's legs. (*Id.*, ¶ 15.) Fearing further injury, Plaintiff got out of his truck. (*Id*., ¶ 16.) The officers allegedly threatened Plaintiff with pepper spray and Officer Toler violently pushed Plaintiff against his truck while Officer Sipple handcuffed Plaintiff and placed him under arrest. (*Id.*) The officers took Plaintiff to the Gilbert police station and kept him seated in a chair and tightly handcuffed for two hours. (*Id.*, ¶ 18.) The officers allegedly ignored Plaintiff's requests to loosen the handcuffs despite evidence that the cuffs were cutting into Plaintiff's wrists. (*Id.*, ¶ 19, 20.)

The officers charged Plaintiff in magistrate court with six crimes including failure to sign the citation and battery on a police officer. (*Id.*, ¶ 21.) The magistrate immediately dismissed the failure to sign citation charge on the grounds that no law required a person to sign a citation. (*Id.*, ¶ 22.) All other charges were dismissed with prejudice when Officers Sipple and Toler and the prosecuting attorney failed to appear for the trial. (*Id.*, ¶ 24.)

## *II. LEGAL STANDARDS*

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations "must be simple, concise, and direct" and "no technical form is required." Fed. R. Civ. P. 8(d)(1).

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). While "the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1202 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* In other words, the factual allegations (taken as true) must "permit the court to infer more than the mere possibility of misconduct." *Id.* A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. "The plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully' . . . [i]t requires the plaintiff to articulate facts, when accepted as true, to 'state a claim to relief *that is plausible on its face.*' " *Francis*, 588 F. 3d at 193 (quoting *Twombly,* 550 U.S. at 570). While a court must accept the material facts alleged in the complaint as true, *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), statements of bare legal conclusions "are not entitled to the assumption of truth" and are

insufficient to state a claim, *Iqbal*, 556 U.S. at 679. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Facts pled that are "merely consistent with" liability are not sufficient. *Iqbal* at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Id.* (internal quotation marks omitted); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.*

The question of whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in Rule 8 (providing general rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of a pleading and stating its significance), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). *Francis*, 588 F.3d at 192.

In reviewing the sufficiency of a complaint a court is generally limited to the allegations stated in the complaint, but may properly consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) (citation omitted).

## *III. DISCUSSION*

### *A. Plaintiff's Allegations*

In his Complaint, Plaintiff generally alleges that this action is "brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and under state law of the State of West Virginia." (Docket 1, ¶ 1.) He broadly states that Defendant violated his right to

> substantive due process to life and liberty and committed acts against the plaintiff that constitute unnecessary and unreasonable use of force, false arrest/unlawful detention, and abuse of process, all in violation of the First, Fourth and Fourteenth Amendments to the Constitution of the United States and 42 § [sic] U.S.C. § 1981, 1983, 1985, 1986 and 1988.

(*Id.*, ¶ 2.) Additionally, the Complaint generally alleges that Defendant "by and through its agents and employees" and "as the result of customs, plans or policies of the defendant" is liable under state law under various legal theories "including malicious prosecution, abuse of process, negligent and intentional infliction of emotional distress, and assault and battery." (*Id.*) Plaintiff alleges eight specific counts, each incorporating by reference all preceding allegations:

- "Count I—Constitutional Violations—Excessive and Unreasonable Use of Force";
- "Count II—Constitutional Violations—Unlawful Detainment—False Arrest";
- "Count III—Constitutional Violations—Negligent Hiring—Failure to Train—Failure to Supervise";
- "Count IV—State Law Claims";
- "Count V—Intentional of [sic] Negligent Infliction of Emotional Distress/Tort of Outrage";
- "Count VI—Count VI—Negligence";
- "Count VII—Intentional Infliction of Emotional Distress"; and

- "Count VIII"[1].

(Docket 1 at 6-12.)

In his prayer for relief, Plaintiff requests an award of damages, interest, attorney's fees and costs, and injunctive relief. (*Id*. at 12-13.)

*B. The Parties' Arguments*

Defendant contends that Plaintiff's § 1983 claims fail because

> the Defendants [sic] are entitled to qualified immunity for the discretionary functions and acts made within the scope of their [sic] employment, as well as any and all alleged violations of Plaintiff's constitutional rights. Therefore, the Town of Gilbert is not liable to Plaintiff because Officers Sipple and Toler did not engage in any activities which were 'clearly unlawful.'

(Docket 10 at 4.) Defendant continues his argument citing well-established qualified immunity case law. Defendant concedes that Plaintiff was not required by law to sign the citation and that Officer Sipple's insistence that Plaintiff sign the citation was a mistake. (*Id*. at 6.) Defendant contends, however, that Officer Sipple's mistake falls within the "bad guesses in a gray areas" exception to § 1983 liability. (*Id*.) Defendant further argues that Plaintiff's refusal to obey an instruction that Officer Sipple reasonably believed was lawful gave the officers grounds to arrest Plaintiff. (*Id.*)

Plaintiff responds that "[i]t is certainly clear that the defendant has the right to assert the Doctrine of Qualified Immunity on behalf of its officers to bar this action." (Docket 11 at 4.) Plaintiff maintains, however, that qualified immunity is not absolute and the allegations contained in the Complaint adequately show that Defendant is not entitled to qualified immunity. (Docket 11 at 6-9.)

---

[1] Count VIII is not a cause of action but rather a stipulation that Plaintiff agrees to not seek recovery beyond the limits of Defendant's insurance coverage. (Docket 1 at 12.)

*C. Analysis*

*1. Counts I and II—§ 1983 Excessive Force and False Arrest Claims*

The Court construes Counts I through III as claims brought pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

"A municipality or other local government may be liable under this section if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation." *Connick*, ___ U.S. ___, 131 S.Ct. at 1359 (quoting *Monell v. New York City Dept. of Social Servs*., 436 U.S. 658, 692 (1978)). Under § 1983, local governments are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665–683). They are not vicariously liable under § 1983 for their employees' actions. *See id*. at 691; *Canton*, 489 U.S. at 392; *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (collecting cases).

To prove a § 1983 claim against a municipality, a plaintiff must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S. at 691, 694. "To state a cause of action against a municipality, a [S]ection 1983 Plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." *Alexander v. City of Greensboro*, 762 F.Supp.2d 764, 781 (M.D.N.C. 2011) (quoting *Pettiford v. City of Greensboro*, 556 F.Supp.2d 512, 530 (M.D.N.C.2008)); *see Jordan ex. rel Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir.1994). A "policy or custom for which a

municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so "persistent and widespread" as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted) (citing *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir.1999)). Such customs may be attributed to a local government if the duration and frequency of the practices rises to a level so that the governing body may be deemed to have constructive knowledge that the practices have become customary among its employees. *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir.1987). "Constructive knowledge may be evidenced by the fact that the practices have become so widespread and flagrant that in the proper exercise of its official responsibilities the governing body should have known of them." *Id*.

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton*, 489 U.S. at 388. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.*, at 389.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cnty*., 520 U.S., at 410. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.*, at 407. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S. at 395, (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in de facto respondeat superior liability on municipalities. . . ." *Id*., at 392.

As stated, Counts I and II fail as a matter of law because these "Constitutional" excessive force and false arrest claims, are predicated on *respondeat superior* liability theories. (Docket 1, ¶¶ 27-35.) Count I alleges that Plaintiff "suffered bodily injury at the hands of defendant's agents, Sipple and Toler. . . ." (*Id.* ¶ 29.) Additionally, Count I alleges that "[a]s a direct and proximate result of the actions of the defendants [sic] and its agents and employees" Plaintiff has suffered "great emotional distress, pain and suffering, and physical harm to his person. . . ." (*Id.* ¶ 30.) Plaintiff suffered these alleged injuries "all as result of the excessive and unjustified force used against him by agents and employees of Defendant Town of Gilbert." (*Id.* ¶ 29.) Count I expressly cites 42 U.S.C. § 1983 as the statutory basis of that claim. Similarly, Count II alleges that "the acts of the defendant, Town of Gilbert, by and through its agents and employees" unlawfully arrested and detained Plaintiff. (*Id.* ¶ 34.) Count II does not reference § 1983, but its heading, as in Count I and Count III, delineates this as a "Constitutional violation."[2] Insofar as Counts I and II plead excessive force and false arrest claims arising under § 1983 and

---

[2] Nowhere in his Complaint does Plaintiff reference the West Virginia Constitution.

are predicated on *respondeat superior* liability, these Counts fail to state cognizable claims for relief. Accordingly, the Court **GRANTS IN PART** Defendant's motion to dismiss and **DISMISSES** Counts I and II.

*2. Count III*

Count III asserts a municipal liability claim against Defendant. Count III alleges that:

(1) prior to the alleged incident, the Defendant "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the Town of Gilbert which eventually and directly caused the violation of the plaintiff's constitutional rights" (*Id.*, ¶ 37);

(2) Defendant's "policy and/or custom" was "to inadequately and improperly investigate citizen complaints of police misconduct" and Defendant "ignored, tolerated, and implicitly approved" of such misconduct (*Id.*, ¶ 38);

(3) Defendant's "policy and/or custom" was to "inadequately hire, supervise, and train and retain its police officers, including Officers B.T. Sipple and R. Toler" and, consequently, Defendant failed to "adequately discourage further constitutional violations on the part of its police officers" (*Id.,* ¶ 39);

(4) Defendant did not require appropriate in-service training of its officers or re-training of officers who were known to have engaged in police misconduct (*Id.,* ¶ 40);

(5) Defendant knew that Officers Sipple and Toler had a longstanding history of physical violence toward citizens and had received excessive force complaints against these officers prior to the alleged incident (*Id.*, ¶¶ 41, 42);

(6) "[a]ll of these actions were done pursuant to a custom, plan or policy of the [D]efendant that was in violation of the provisions of the United States Constitution, the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and under state law of the State of West Virginia" (*Id.,* ¶ 43);

(7) as a result of these "policies and customs, police officers of the defendant, including Sipple and Toler, believed that their actions would not be properly monitored by supervisory officers and that their misconduct would not be investigated or sanctioned, but, rather, would be tolerated" (*Id.*, at ¶ 44);

(8) these "policies and customs demonstrated a deliberate indifference on the part of the policymakers of the defendant to the constitutional rights of persons within

the Town of Gilbert, and were the cause of the violations of the plaintiff's rights. . . ." (*Id.*, ¶ 45);

(9) "As a direct and proximate cause" of Defendant's actions, Plaintiff suffered a "loss of liberty and freedom," physical harm, and emotional distress. (*Id.*, ¶¶ 46, 47).

Fairly construed, these allegations identify three "policies and customs" as a basis for municipal liability: (1) inadequately investigating citizen complaints concerning police misconduct; (2) ignoring, tolerating, and implicitly approving of police misconduct; and (3) inadequately hiring, supervising, and training police officers. Although Count III is silent as to the precise form of these alleged policies and customs, it is apparent Plaintiff is not proceeding on the theory that the alleged policies arose from some written rule or regulation, or pronouncement by a municipal official. Rather, Plaintiff appears to base his claims on alleged persistent and widespread inaction by Defendant, *e.g.*, failure to investigate complaints, failure to address police officer misconduct, failure to adequately hire, supervise, and train its police officers.

To establish a claim against Defendant, a municipality, Plaintiff must plausibly show that Officers Toler and Sipple were acting in accordance with a policy or custom of the Town of Gilbert. In *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978), the Supreme Court interpreted § 1983 to permit a municipality to be held liable for constitutional deprivations resulting from its employees' conduct. The Court, however, stated "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Consequently, "plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that

proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir.1994); *see also Monell*, 436 U.S. at 694 (holding plaintiff must prove that "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury").

Policy or custom may be shown in a number of ways, such as "in . . . 'persistent . . . practices of [municipal] officials having the de facto force of law.' " *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984). "[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91. Thus, a prerequisite to municipal liability is the finding that an official policy or custom existed.

Policy or custom may also "be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees." *Milligan*, 743 F.2d at 229–30. Under narrow circumstances, policy may also be inferred "from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Id*. at 230. However, "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Id*.

Here, Count III satisfies *Iqbal* and *Twombly's* pleading standards.[3] While several of the allegations in Count III simply parrot the legal elements of a *Monell* claim (Docket 1, ¶¶ 37-39, 43-46), Plaintiff alleges facts—which the Court must assume as true at this stage of the

[3] Although the Count finds Count III sufficient, it is barely so.

case—that allege Defendant knew that Officers Sipple and Toler had a longstanding history of physical violence toward citizens, had received complaints regarding these officers' conduct, and did not require training or re-training of police officers known to engage in police misconduct. (*Id*. ¶¶ 40-42.) These allegations, taken as true, plausibly show that Defendant was on either actual or constructive notice that a particular omission in its training program caused its employees to violate citizens' constitutional rights. *See Connick*, ___ U.S. ___, 131 S.Ct. at 1359. Accordingly, Defendant's motion to dismiss is **DENIED** with respect to Count III.

*3. Count IV, V & VII—State Law Claims: Intentional and Negligent Infliction of Emotional Distress/Tort of Outrage Claims*

Counts IV, V, and VII allege state law intentional and negligent infliction of emotional distress and outrageous conduct claims. Whether state immunity precludes these claims is controlled by West Virginia law. *Woods v. Town of Danville, W.Va.*, 712 F. Supp.2d 502, 510 (S.D. W. Va. May 14, 2010).

"Political subdivisions are liable for injury, death or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." W. Va. Code § 29–12A–4 (c)(2) (emphasis added). Political subdivisions are not, however, liable for "intentional malfeasance" on the part of their employees. *Mallamo v. Town of Rivesville*, 477 S.E.2d 525, 533–34 (1996) (holding that the Town of Rivesville could not be held vicariously liable for an alleged conspiracy by its police officers). Counts IV (intentional infliction of emotional distress, assault and battery), Count V (intentional infliction of emotional distress, outrage), and Count VII (intentional infliction of emotional distress) allege intentional—and partially redundant—tort theories against Defendant. Accordingly, the Court **GRANTS IN PART** Defendant's motion to dismiss and **DISMISSES** Counts IV, V, and VII insofar as they allege intentional torts.

Counts IV and V also allege redundant claims against Defendant for negligent infliction of emotional distress. These Counts present two questions: (1) Whether Defendant is immune from liability under the West Virginia Governmental Tort Claims and Insurance Reform Act (W. Va. Code § 29-12A-1 *et seq*.); and (2) if not, whether Plaintiff has stated a viable claim for negligent infliction of emotional distress.

"The general rule of construction in governmental tort legislation cases favors liability, not immunity. Unless the legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail." Syl. Pt. 2, *Marlin v. Bill Rich Const., Inc.*, 482 S.E.2d 620 (1996). West Virginia Code § 29–12A–4(b)(1) provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property" caused by the political subdivision or its employees "in connection with a governmental or proprietary function." However, West Virginia Code § 29–12A–4(c)(2) states that, subject to the exceptions provided in §§ 29-12A-5 and 29-12A-6, "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." Notwithstanding this rule, a political subdivision is immune from liability if the claim results from "the failure to provide, or the method of providing police, law enforcement . . . protection." W. Va. Code § 29-12A-5(a)(5). The phrase "the method of providing police, law enforcement or fire protection" . . . refers to the decision-making or the planning process in developing a governmental policy, including how that policy is to be performed." Syl. Pt. 4 *Smith v. Burdette*, 566 S.E.2d 614 (2002). West Virginia Code § 12A-5(a)(5) "does not provide immunity to a political subdivision for the negligent acts of the political subdivision's employee performing acts in furtherance of a method of providing police, law enforcement or fire

protection." *Id.*, Syl. Pt. 5. Accordingly, insofar as Plaintiff's claim is predicated on Defendant's employees' conduct (*i.e.* the police officers' improper instruction that Plaintiff sign the citation and their arrest and detention of Plaintiff) in furtherance of a method of providing law enforcement protection, the Court finds Defendant is not immune from liability.

Having determined that Defendant is not immune from liability on the claim of negligent infliction of emotional distress, the question now is whether Plaintiff has stated this claim plausibly. "To prove negligent infliction of emotional distress, a plaintiff is required to show (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that the defendant's negligent conduct was a cause of the serious emotional distress." *Mowery v. Logan Cnty. Bd. of Ed.*, No. 2:11-cv-00050, March 15, 2012 (S.D. W. Va. 2012) (Johnston, J.) (citing *Stump v. Ashland, Inc.*, 499 S.E.2d 41, 46 (W.Va. 1997). "An individual may recover for the negligent infliction of emotional distress absent accompanying physical injury upon a showing of facts sufficient to guarantee that the emotional damages claim is not spurious." Syl. pt. 2, *Ricottilli v. Summersville Mem'l Hosp.*, 425 S.E.2d 629 (W.Va. 1992). "Serious emotional distress" is emotional injury that is both severe and debilitating and may be found where an "ordinarily sensitive person" would be unable to cope adequately with the mental distress caused by a defendant's negligence. *Heldreth v. Marrs*, 425 S.E.2d 157, 165-66 (W. Va. 1992).

Counts IV and V fail to state plausibly claims for negligent infliction of emotional distress. Count IV, unhelpfully titled "State Law Claims," begins by incorporating by reference all preceding paragraphs of the Complaint. (Docket 1 at 9.) Thereafter, follow three sentences:

> (1) The actions of the defendant town of Gilbert and its agents, constitute and intentional infliction of emotional distress, negligent infliction of emotional distress and assault and battery under the laws of the State of West Virginia;

> (2) As a direct and proximate cause of the action of the defendant, the plaintiff, Verner Fred Poe, Jr., has suffered physical injuries and great emotional distress, mental anguish, embarrassment and humiliation, as set forth in Paragraph [sic] 29 and 30, for which he is entitled to compensation; and
>
> (3) As a direct and proximate result of the actions of the defendant, the plaintiff was caused to incur medical expenses and costs, suffered great physical harm, permanent injuries to his body, pain and suffering, past, present and future, embarrassment, mental anguish and emotional distress.

Paragraph 29 is limited to a description of Plaintiff's alleged physical injuries and asserts no facts to show that Plaintiff's claim is plausible (and not spurious.) Similarly deficient, Paragraph 30 merely offers the unadorned conclusion that "[a]s a direct and proximate result of the actions of the defendants [sic] and its agents and employees, the plaintiff has suffered great emotional distress, pain and suffering, and physical harm to his person, and other damages." (*Id.* at 7.)

Count V is titled "Intentional of [sic] Negligent Infliction of Emotional Distress/Tort of Outrage." (Docket 1 at 10.) Count VII is titled "Intentional Infliction of Emotional Distress." (*Id.* at 11.) These two counts incorporate all preceding paragraphs of the Complaint, tangle together partial elements of intentional and negligent infliction of emotional distress theories, and are even factually sketchier claims than Count IV. These counts fail, not just because they are redundant, but also because they, like Count IV, fail to plausibly state claims. Stated differently, inadequately pleading the same cause of action thrice will not make any survive dismissal. Accordingly, the Court **GRANTS IN PART** Defendant's motion to dismiss and **DISMISSES** Counts IV, V, and VII**.**

*4. Count VI—Negligent Hiring and Retention*

Count VI is titled "Negligence." (*Id.*) Like the others, this count incorporates all preceding paragraphs. (*Id.*)

West Virginia recognizes a cause of action based upon negligent hiring and retention. *Krein v. West Virginia State* Police, No. 2:11-cv-00962, 2012 WL 2470015 (S.D. W. Va. June 27, 2012) (Copenhaver, J.) (citing *State ex rel. West Virginia State Police v. Taylor*, 499 S.E.2d 283, 289 n. 7 (W. Va. 1997) and *McCormick v. W. Va. Dep't of Public Safety*, 503 S.E.2d 502, 506–07 (W. Va. 1998). West Virginia's municipal liability statute "does not contemplate immunity where a plaintiff sues based on negligent hiring and supervision of an employee." *Woods v. Town of Danville, West Virginia*, 712 F.Supp.2d 502, 514 (S.D.W.Va.2010) (Goodwin, C.J.). To prove negligence under West Virginia law, a plaintiff must prove "that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff." *Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W. Va. 2004). The question whether an employer has negligently hired and retained an employee is informed by the following inquiries:

> When the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis-a-vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick*, 503, S.E.2d at 506.

Here, Plaintiff alleges:

(1) That at all times mentioned herein, the defendant, Town of Gilbert, was negligent in the hiring of Sipple and Toler;

(2) That at all times mentioned herein, the defendant, Town of Gilbert was negligent in the training, supervision, and retention of Sipple and Toler; and

(3) That as a direct and proximate cause of the negligent hiring and supervision of Sipple and Toler, the plaintiff suffered damages as hereinbefore set forth.

A few of the preceding paragraphs of the Complaint weakly amplify these legal conclusions. Paragraphs 40 through 42 of Count III state that Defendant failed to require in-service training of police officers known to have engaged in police misconduct, that Defendant knew the Officers Sipple and Toler had a history of violence and had received excessive force complaints against them and did nothing about it.[4] (Docket 1.) Like Count III, these cobbled allegations, assumed to be true and taken in the light most favorable to Plaintiff, make out—albeit barely—a plausible negligent training, supervision, and retention claim against Defendant. Accordingly, the Court **DENIES** Defendant's motion to dismiss Count VI.

## *IV. CONCLUSION*

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss [Docket 9.]

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 5, 2012

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

[4] The Court notes that these factual allegations, like many of the others, are pleaded "upon information and belief." (*Id.*) Rule 11 permits counsel to present a pleading to the Court certifying that to the best of counsel's "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the factual contentions contained in the pleading either have evidentiary support or will likely have evidentiary support after further investigation and discovery. Fed. R. Civ. P. 11(b)(3). Plaintiff's allegations that Officers Sipple and Toler had a "longstanding history of physical violence toward citizens," and Defendant knew as much and did nothing, are serious allegations unenhanced by any further specificity by Plaintiff. The Court will presume at this stage that the requirements of Rule 11 are met.